1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

LORAINE MICHELLE RENTERIA,

                Plaintiff,

    v.

MARTIN O'MALLEY,
Commissioner of Social Security,[1]

                Defendant.

_____/

Case No. 1:23-cv-01693-SKO

ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT

(Doc. 1)

## I.      INTRODUCTION

Plaintiff Loraine Michelle Renteria ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for Supplemental Security Income (SSI) under the Social Security Act (the "Act").  (Doc. 1.)  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II.      FACTUAL BACKGROUND

On July 15, 2021, Plaintiff protectively filed an application for SSI payments, alleging she

---

[1] On December 20, 2023, Martin O'Malley was named Commissioner of the Social Security Administration.  *See* https://www.ssa.gov/history/commissioners.html.  He is therefore substituted as the defendant in this action.  *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in [their] official capacity, be the proper defendant.").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (*See* Doc. 11.)

became disabled on May 29, 2019, due to a neck/spine injury, post-traumatic stress disorder ("PTSD"), and depression.  (Administrative Record ("AR") 18, 62, 63, 85, 86, 87, 124, 267, 273, 309, 332, 359.)

Plaintiff was born on September 16, 1969, and was 51 years old on the date the application was filed.  (AR 26, 62, 85, 273, 332, 359.)  She has a limited (11th grade) education and can communicate in English.  (AR 26, 266–68.)  Plaintiff has no past relevant work.  (AR 26, 55, 267.)

**A.    Relevant Evidence of Record[3]**

In April 2022, Plaintiff presented to a neurology clinic complaining of occasional episodes of vertigo, imbalance, and falls, usually triggered by walking or head position change.  (AR 1510–15.)  She was assessed with "probable [Benign Paroxysmal Positional Vertigo]" ("BPPV") and referred to physical therapy.  (AR 1514, 1532, 1535, 1543.)

At a physical therapy evaluation with physical therapist Hannah Case in July 2022, Plaintiff reported a history of falls and vertigo symptoms with bending forward and the transition from sitting to lying down.  (AR 1559, 1672, 1693.)  She reported difficulty walking and completing activities of daily living.  (AR 1559, 1674, 1695.)  On examination, PT Case noted Plaintiff's symptoms reproduced with return to neutral cervical position from extension, and testing was suggestive of vestibular hypofunction with associated decreased proprioception and standing balance.  (AR 1559, 1674, 1695.)  At a physical therapy session later that month, PT Case indicated Plaintiff "[d]oes require light hand support in standing to maintain balance and close [stand-by-assist] for safety." (AR 1680, 1701.)

In August 2022, Plaintiff presented to an otolaryngology clinic complaining of intermittent positional vertigo lasting seconds at a time when she turns her head in certain positions.  (AR 1528.)  The provider assessed Plaintiff with BPPV.  (AR 1528.)

**B.    Administrative Proceedings**

The Commissioner denied Plaintiff's applications for benefits initially on January 19, 2022, and again on reconsideration on May 2, 2022.  (AR 18, 110–14, 124–29.)  Consequently, Plaintiff

---

[3] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

requested a hearing before an Administrative Law Judge ("ALJ"). (AR 130–44.) At the hearing on October 26, 2022, Plaintiff appeared with counsel by phone and testified before an ALJ as to her alleged disabling conditions. (AR 40–53.) A Vocational Expert ("VE") also testified at the hearing. (AR 54–59.)

**C.     The ALJ's Decision**

In a decision dated December 27, 2022, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 18–28.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 416.920. (AR 20–28.) The ALJ decided that Plaintiff had not engaged in substantial gainful activity since July 15, 2021, the application date (step one). (AR 20.) At step two, the ALJ found Plaintiff's following impairments to be severe: degenerative disc disease, obesity, benign paroxysmal positional vertigo (BPPV), and hypertension. (AR 18–19.) Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 22.)

The ALJ assessed Plaintiff's residual functional capacity (RFC)[4] and applied the assessment at steps four and five. *See* 20 C.F.R. § 416.920(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform light work as defined in 20 CFR [§] 416.967(b) except that she cannot climb ladders, ropes, or scaffolds, and can only occasionally balance, kneel, stoop, crouch, crawl, or climb ramps and stairs. [Plaintiff] must avoid concentrated exposure to extreme cold and wetness and hazards such as unprotected heights and dangerous moving machinery.

(AR 22–26.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" the ALJ rejected Plaintiff's subjective testimony as "not

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id.* "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 23.)

The ALJ determined that Plaintiff had no past relevant work (step four) but that, given her RFC, she could perform a significant number of jobs in the national economy (step five). (AR 26–28.) In making this determination, the ALJ posed a series of hypothetical questions to the VE. (AR 55–57.) In response, the VE testified that a person with the specified RFC could perform the jobs of office helper, routing clerk, and marking clerk (marker). (AR 56–57.) The VE further testified that being off task 10% or more of the workday or being absent 12 times per year in these jobs would preclude all work. (AR 57.) The ALJ ultimately concluded Plaintiff was not disabled since July 15, 2021, the application date. (AR 28.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on October 12, 2023. (AR 1–7.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 416.1481.

### III.     LEGAL STANDARD

**A.     Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they] are not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

In step one, the ALJ determines whether a claimant is currently engaged in

substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.    Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the

1  evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*,

2  253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational

3  interpretation, the court may not substitute its judgment for that of the Commissioner." (citations

4  omitted)).

5       Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a

6  specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*,

7  143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole,

8  weighing both evidence that supports and evidence that detracts from the [Commissioner's]

9  conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

10       Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless."

11  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*,

12  454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record

13  that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*,

14  533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he

15  burden of showing that an error is harmful normally falls upon the party attacking the agency's

16  determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

17  **IV.   DISCUSSION**

18       Plaintiff contends that the ALJ erred by ignoring the "medical opinion" of PT Case and

19  "craft[ing] [their] own vertigo limitations for Plaintiff based on [their] own lay assessment" instead.

20  (Doc. 17 at 11–12; Doc. 22 at 1–4.) The Court disagrees and finds that remand is not warranted in

21  this case.

22       Under the revised regulations applicable to claims filed after March 27, 2017, as applicable

23  here, when a claimant challenges an ALJ's decision to discredit the opinions of a medical source, a

24  reviewing court ordinarily must evaluate whether the ALJ "considered the supportability and

25  consistency factors" and whether substantial evidence supports the ALJ's conclusions as to those

26  factors. *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). However, these requirements only

27  apply to the evaluation of medical opinions, and not all statements by medical sources qualify as

28  opinions. *See generally Hale v. Kijakazi,* No. CV 21-53-H-JTJ, 2022 WL 14654959, at *6 (D. Mont.

Oct. 25, 2022) ("An ALJ must discuss statements by a medical source that qualify as 'medical opinions' . . . [but] is not required to address statements by a medical source that do not qualify as medical opinions.") (citations omitted).

Here, Plaintiff faults the ALJ for not analyzing, and incorporating in the RFC, the following statement that appeared in PT Case's physical therapy treatment notes: Plaintiff "[d]oes require light hand support in standing to maintain balance and close [stand-by-assist] for safety."  (AR 1680, 1701.)  The Court finds no error in the ALJ's omission because this statement does not qualify as a medical opinion.  By regulation, a "medical opinion" is defined as follows:

> A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the [following] abilities . . . (i) (A) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); (B) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting; (C) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and (D) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

20 C.F.R. § 416.913(a)(2).  "Thus, a 'medical opinion' must discuss both a claimant's limitations and 'what [the claimant] is still capable of doing' despite those limitations." *Jessie L. v. Kijakazi*, No. 20-CV-9305-DMR, 2022 WL 2222964, at *14 (N.D. Cal. June 21, 2022) (quoting *Michael H. v. Saul*, 5:20-CV-417 (MAD), 2021 WL 2358257, at *6 (N.D.N.Y. June 9, 2021))[5]; *see also Rodin v. Comm'r of Soc. Sec.*, No. 21-0900, 2023 WL 3293423, at *12 (E.D. Cal. May 5, 2023) ("[T]he revised regulations now more narrowly define as [medical opinion] a statement from a medical source about what a claimant can still do despite impairments, and whether the claimant is functionally restricted in the demands of work activities such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions.").  *Accord Michael H.*, 2021 WL 2358257,

---

[5] Cases discussing 20 C.F.R. § 404.1513(a)(2) (disability insurance benefits), instead of 20 C.F.R. § 416.913(a)(2) (supplemental security income), are applicable here because the provisions are identical, and courts have interpreted them as such. *See, e.g., Gonzalez v. Colvin*, No. 13-1701, 2014 WL 3055732, at *2 n.2 (C.D. Cal. July 7, 2014) (noting that the provisions for disability insurance benefits are "parallel and virtually identical" to those governing supplemental security income).

at *6 ("This note presents a close call on what is considered a medical source statement[;] [w]hile it discusses Plaintiff's limitations, it does not discuss what Plaintiff is still capable of doing [and] [u]nder the previous regulations, what a plaintiff could do in spite of their impairments was just one of the listed factors tending to establish the medical provider's judgments about the nature and severity of the plaintiff's impairments . . . [h][owever, under the new regulations, a medical source opinion must do both."). The statement at issue here does not satisfy the definition of "medical opinion" because it does not describe what Plaintiff can still do despite her impairments. *See, e.g., Dorsey v. Comm'r of Soc. Sec. Admin.,* No. CV-22-01297-PHX-DWL, 2023 WL 6058505, at *5 (D. Ariz. Sept. 18, 2023) ("The statement in Dr. Subbarao's treatment note does not qualify as a 'medical opinion' . . . because it does not address Plaintiff's functionality and merely describes the frequency . . . of Plaintiff's headaches. Even accepting the treatment note at face value, it does not address the extent to which Plaintiff's headaches would affect Plaintiff's ability to work."); *Brayden B. v. Comm'r, Soc. Sec. Admin.,* No. 3:20-CV-1963-MO, 2023 WL 5606981, at *4 (D. Or. Aug. 30, 2023) ("[Dr. Heuser] did not provide any description of what Plaintiff could still do despite his urticaria. Nothing in the record or Plaintiff's briefing shows where Dr. Heuser identified what Plaintiff can do despite his limitations; the sum total of the opinion is that his urticaria and dermatitis 'keep him from working.' Because that is not a 'medical opinion' that requires independent analysis under the regulations, the Court finds the ALJ did not err by failing to analyze Dr. Heuser's opinion.") (citations omitted); *Rodin*, 2023 WL 3293423, *18–19 ("[N]otably absent are specific opinions concerning what Plaintiff is capable of doing . . . . Accordingly, the Court finds the ALJ was not required to evaluate Dr. Khanna's treatment notes as a 'medical opinion' under the relevant regulations.").

Plaintiff's difficulties with balance, as observed by PT Case, did not go unnoticed by the ALJ. The decision states, "[Plaintiff's] vertigo can be expected to contribute to her limitation to light work with only occasional balancing, and to her need to avoid climbing of ladders, ropes, or scaffolds and avoid concentrated exposure to hazards such as unprotected heights and dangerous moving machinery." (AR 25.) Plaintiff asserts that these limitations, as incorporated in the RFC, are unsupported by substantial evidence because they lack a "medical basis," citing *Bird v. Berryhill*,

No. 1:16-cv-00755-SKO, 2017 WL 3334009, at *9 (E.D. Cal. Aug. 4, 2017).  (Doc. 17 at 11–12; Doc. 22 at 4–5.)  This argument is unavailing.  The nature of the ALJ's responsibility is to interpret the evidence of record, including medical evidence.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Such a responsibility does not result in the ALJ committing legal error when they assess an RFC that is consistent with the record.  *See Mills v. Comm'r of Soc. Sec.*, No. 2:13-CV-0899-KJN, 2014 WL 4195012, at *4 (E.D. Cal. Aug. 22, 2014) ("[I]t is the ALJ's responsibility to formulate an RFC that is based on the record as a whole, and thus the RFC need not exactly match the opinion or findings of any particular medical source.") (citing *Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989)).

The *Bird* case cited by Plaintiff is distinguishable because in that case the ALJ ignored actual medical opinion evidence, improperly rejected probative medical evidence based on a mischaracterization of the evidence in the record, and failed to explain how they arrived at their conclusions or what evidence supported them.  *See id.* at *8–9.  Here, in contrast, the ALJ expressly considered the medical opinion evidence of the State agency physicians and the consultative examiner (*see* AR 25–26), and also discussed the probative medical evidence post-dating their opinions, including the physical therapy treatment notes by PT Case and other records that Plaintiff cites in her briefing (*see* AR 25 (citing AR 1510–14; AR 1559–60; AR 1693–98)).  The ALJ, as charged to do, then analyzed the persuasiveness of the medical opinions (a determination Plaintiff does not challenge), ultimately formulating an RFC with greater limitations than those opined.  As explained by the ALJ, these additional restrictions further accounted for Plaintiff's severe impairment of benign paroxysmal positional vertigo (BPPV) based on treatment records showing "history of falls over the last year," "vertigo symptoms with sitting to lying transition and bending forward," and testing that suggests "vestibular hypofunction associated with decreased proprioception and standing balance."  (AR 25.)  The ALJ was entitled to review and interpret this evidence.[6]  *See, e.g., Ann M. v. Berryhill*, No. 5:18-CV-01080-KES, 2019 WL 1171160, at *6 (C.D.

---

[6] The ALJ's RFC assessment is also based on consideration of Plaintiff's subjective complaints.  (*See* AR 24–25.)  Plaintiff does not challenge the sufficiency of the evidence supporting the ALJ's adverse credibility finding or the adequacy of the ALJ's reasons given to explain this finding.  The Court therefore considers the ALJ's unchallenged credibility finding to be binding.  *See, e.g., Stanley v. Astrue*, No. 1:09–cv–1743 SKO, 2010 WL 4942818, at *6 (E.D. Cal. Nov. 30, 2010).

Cal. Mar. 12, 2019) ("Contrary to the cases cited by Plaintiff, the records in this case provided the ALJ with ample support for his RFC, which was based not on raw data but on treatment notes, which included Plaintiff's subjective complaints, observations by physicians, and the treatment plans.") (internal quotation marks omitted); *Mills,* 2014 WL 4195012, at *4 (finding argument that the ALJ was improperly attempting to "play doctor" lacked merit where the ALJ "carefully analyzed the various medical opinions, treatment records, and plaintiff's own testimony in formulating an RFC.").

In sum, the Court does not find error in a failure to analyze the statement of PT Case and further finds that substantial evidence supports the ALJ's conclusions regarding the impact of Plaintiff's vertigo impairments on the RFC.  Plaintiff may disagree with the RFC, but the Court must nevertheless uphold the ALJ's determination because it is a rational interpretation of the evidence. *See Ford*, 950 F.3d at 1159 ("Our review of an ALJ's fact-finding for substantial evidence is deferential"); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## V.        CONCLUSION AND ORDER

After consideration of Plaintiff's and Defendant's briefs and a thorough review of the record, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.  The Clerk of Court is DIRECTED to enter judgment in favor of Defendant Martin O'Malley, Commissioner of Social Security, and against Plaintiff.

IT IS SO ORDERED.

Dated:   **September 30, 2024**                          */s/ Sheila K. Oberto*
                                                      UNITED STATES MAGISTRATE JUDGE